UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANNY NORTH                                              CIVIL ACTION

VERSUS                                                   NO. 05-3320

JO ANNE B. BARNHART,                                     SECTION "N" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Danny North, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") and supplemental security income benefits ("SSI") under

Titles II and XVI, respectively, of the Act.  42 U.S.C. §§ 405(g), 4232, 1381a.  This

matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)

and Local Rule 73.2E(B).

As ordered, Record Doc. No. 12, plaintiff filed a memorandum of facts and law. Record Doc. No. 13. Defendant filed a timely reply memorandum. Record Doc. No. 14.

I.     PROCEDURAL HISTORY

North filed an application for SSI on December 1, 2001 and for DIB on January 7, 2002, alleging disability since September 30, 2000 because of injury to his neck, back, shoulders, arms and legs. (Tr. 47, 261-63). After his applications were denied, North requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 20, 2003. On June 4, 2003, the ALJ denied plaintiff's application. (Tr. 265-79).

The Appeals Council vacated the decision and remanded the matter to the ALJ on September 24, 2003. (Tr. 284-86). The ALJ held a second hearing on January 4, 2005 and issued an unfavorable decision on February 14, 2005. (Tr. 12-20). After the Appeals Council denied review on May 20, 2005 (Tr. 5-8), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.     The ALJ violated the remand order because he failed to analyze or discuss plaintiff's side effects from his medications.

B.     The ALJ violated the remand order because he failed to resolve any conflicts with the Dictionary of Occupational Titles ("DOT").

2

C.     The ALJ erred in concluding that plaintiff could work in jobs that existed in significant numbers in the national economy because there was no evidence regarding the numbers of jobs available in any particular region.

D.     The ALJ failed to assess whether plaintiff could maintain employment, as required by <u>Watson v. Barnhart</u>, 288 F.3d 211 (5th Cir. 2002).

III.     <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

The ALJ made the following relevant findings:

1.     North's degenerative changes in his cervical and lumbar spines are severe impairments.

2.     His impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

3.     Plaintiff's allegations regarding his limitations are not totally credible because they are not supported by the medical evidence.

4.     North has the residual functional capacity to perform a significant range of light work with the following limitations:  to lift and carry 10 pounds frequently, 20 pounds occasionally; to stand and walk for six hours and to sit for six hours out of an eight-hour day (alternate sitting and standing for 30 minutes at a time); to push and pull within the limits of lifting and carrying; to engage in a full range of postural movements frequently, except that he may never climb ropes, ladders or scaffolds; to manipulate, see and communicate without restriction and to work within any environment.

5.     He cannot return to his past relevant work.

6.     Plaintiff is a younger individual with a GED and has no transferable skills.

7.     Considering his residual functional capacity, age, education and past relevant work experience, there are a significant number of jobs in

> the national economy that North could perform, including security
> guard, inspector/sorter/sampler and surveillance monitor.

(Tr. 17, 19-20).

IV.   ANALYSIS

    A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB and SSI,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2004).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

404.1520, 416.920; <u>Waters</u>, 276 F.3d at 716; <u>Loza</u>, 219 F.3d at 393.[2]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  <u>Leggett v. Chater</u>, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry.

<u>Newton</u>, 209 F.3d at 453.  If he successfully carries this burden, the burden shifts to the

Commissioner to show that other substantial gainful employment is available in the

national economy that the claimant is capable of performing.  When the Commissioner

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  <u>Id.</u> §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  <u>Id.</u> §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  <u>Id.</u> §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  <u>Id.</u> §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  <u>Id.</u> § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174.

B.     Factual Background

Plaintiff testified at the first hearing that he was working at a farm in 2000 when he was injured.  He said that he had worked there seasonally in prior years but that the job had become permanent that year.  (Tr. 370-71).  He stated that the job involved a lot of lifting and bending, such as when a tractor tire went flat and he had to replace it.  He said the job involved a lot of standing and walking the crop rows, seven to eight hours a day.  North stated that he had previously worked in roofing, as a warehouseman at Wal-Mart, in construction, and as a car washer at a car dealership.  (Tr. 371-72).

Plaintiff said he was hurt when he lost control of the tractor he was driving and it slid and turned over.  He explained that he did not fall out of the tractor because of the roll bar, but he was thrown into the roll bar when the tractor turned over.  (Tr. 372-73).  He stated that he hurt his neck, back, shoulder and hip in the accident.

7

North testified that he cannot turn his neck like he used to be able to do.  He said it feels painful on both sides, like it has a permanent crook in it.  He stated that the pain goes into his right arm and that his arm is numb every morning when he wakes up.  He said his shoulder has not improved.  He further testified that he still has problems lifting and cannot raise his arm over his head.  (Tr. 373).

Plaintiff stated that his doctor told him he had soft tissue injuries.  He testified that he cannot bend or stoop because of burning and stinging pain in his back.  He said that if he bends over and then tries to straighten up, it feels like something moves in his back.  He stated that he has pain in both legs every day, especially if he tries to walk for very long.  (Tr. 374).

North testified that he takes Lortab 7.5, Mobic and Skelaxin, a muscle relaxer.  He said the Lortab makes him itch and puts him to sleep most of the time.  He stated that the Skelaxin makes him weak and drowsy.  He said he takes seven Lortab pills a day and has been taking it for a long time.  He said he asked his doctor to prescribe something stronger so that he would not have to take so many pills each day, but his doctor refused because plaintiff "might get hooked on it."

Plaintiff stated that Lortab makes him drowsy for two to three hours after he takes it.  He said he usually takes all seven pills at one time.  (Tr. 375).  He testified that he can sit comfortably for about 30 minutes and can stand for 30 to 40 minutes before he feels

tightness in his back and neck.  (Tr. 375-76).  North said it had been a long time since he tried to lift anything, but he thought he could lift 20 pounds at the most.  He stated that he can lift a gallon of milk but that, sometimes when he reaches into the refrigerator, a shock goes up his back.  He said he cannot bend without pain.

North testified that, on an average day, he sleeps some of the time, walks around a little and tries to do little things that he is able to do.  He said he does nothing the rest of the time.  He stated that he lives with his parents and does no chores around the house. (Tr. 376).

Plaintiff said he does not drive because his driver's license was revoked.  He testified that he has no hobbies and does not socialize, go to the movies or attend church. He said he used to go fishing, ride a bicycle and play football and basketball, but he cannot do these things anymore because he cannot sit or stand for too long.  (Tr. 377).  He said he does not go fishing with his "mother and them" because he cannot sit in the car for the long ride to Dulac.  (Tr. 377-78).  He stated that he feels best when he is sitting down and leaning forward to relieve pressure in his back.  (Tr. 378).

At the second hearing, plaintiff testified that he was 36 years old, completed the eleventh grade and obtained a GED.  He said he never had any vocational training. (Tr. 383).  He stated he has not made any attempts to work since he had the accident while operating a tractor on a sugar cane farm.  He testified that he had been in that job for three

9

years and that it involved planting cane, digging drains, fixing tires and other things.  (Tr. 384).  North said he had previously worked in a warehouse at Wal-Mart, in cement construction jobs and in turnaround jobs as a laborer.  (Tr. 384-85).

North stated that he has had problems with walking since the accident in 2000.  He said that both his legs get entirely numb if he walks too far and that sometimes his legs give out.  He testified that all his muscles tighten up and his neck gets crooked.  He stated that he has had pain in his neck and shoulders, radiating into both arms, for the past four years.  (Tr. 386).  He said he has pain in the middle and lower parts of his back and in his right hip.  He testified that he can sit comfortably for 15 to 30 minutes and that the time varies depending on whether he is on medication.  He could not say how long he could stand but stated that it is harder to sit than to stand.  (Tr. 387).

Plaintiff testified that he takes OxyContin twice a day for pain, a muscle relaxer he called "Sonoma"[3] and Propulsid for acid reflux.  He stated that he suffers dizziness and constant drowsiness from the OxyContin.  He said he has taken pain medication continuously since his injury in 2000.  Plaintiff stated that he had just recently stopped taking Percocet five times a day and that he had taken Lortab before that.  (Tr. 388).

---

[3]Probably should be Soma (generic name:  carisoprodol).

North testified that his pain has been getting worse and that he is now ready to have surgery, if it is authorized,[4] because the medications are not doing anything.  He stated that he becomes immune to the medications after a while and his doctor has to increase his dosage.  He said that the main thing he does on an average day is fall in and out of sleep because of his medications.  (Tr. 389).  He said that he dozes off and wakes up while watching television and staying around the house.  He testified that he cannot go to movies or church because he cannot sit down long enough.

Plaintiff stated that he cannot work because of the pain, even with his medications.  He said that he has difficulty gripping things with his fingers and sometimes it is even hard for him to eat as a result.  He said that he would not be able to operate a tractor while taking OxyContin because he has no sense of direction while taking it.  (Tr. 390).

North testified that he has no life and his entire life consists of pain and medication.  He said he finds it hard to be around people because he gets aggravated quickly and frustrated because he cannot do things that he wants to do.  (Tr. 391).  He stated that he has not seen any mental health counselor.  (Tr. 392).

---

[4]The record does not state who must give this authorization, but it intimates that it may be the Louisiana Worker's Compensation Corporation.

11

C.      Vocational Expert Testimony

Vocational expert, Tom Meunier, testified that plaintiff's past occupations as a tractor operator and in roofing were medium exertional, semi-skilled work with SVP skill levels of 3.[5]   He said that North's warehouse and car washing jobs were medium exertional, unskilled work with SVP skill levels of 2.  According to Meunier, plaintiff's work as a turnaround laborer in a chemical plant was heavy exertional, semi-skilled work with an SVP level of 3, while his work as a construction laborer was heavy exertional, semi-skilled work with an SVP level of 4.  (Tr. 392-93).

---

[5]"SVP" stands for Specific Vocational Preparation, which

is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.
. . . .
The following is an explanation of the various levels of specific vocational preparation:

| Level | Time |
|-------|------|
| 1 | Short demonstration only |
| 2 | Anything beyond short demonstration up to and including 1 month |
| 3 | Over 1 month up to and including 3 months |
| 4 | Over 3 months up to and including 6 months |
| 5 | Over 6 months up to and including 1 year |
| 6 | Over 1 year up to and including 2 years |
| 7 | Over 2 years up to and including 4 years |
| 8 | Over 4 years up to and including 10 years |
| 9 | Over 10 years |

Dictionary of Occupational Titles App. C, ¶ II (4th ed. rev. 1991), avail. at http://www.oalj.dol.gov/public/dot/REFRNC/DOTAPPC.HTM.

The ALJ posed a hypothetical of a 36-year-old claimant with a GED and plaintiff's prior work experience who can perform a limited range of medium work with an alternating sit/stand limitation, not otherwise defined.  The vocational expert stated that he could give no opinion with such an undefined limitation.  (Tr. 393).

The ALJ posed a second hypothetical in which the claimant could perform a limited range of medium work with a moderate impairment in concentration secondary to chronic pain and the effects of chronic pain medication, which would preclude him from doing skilled work or other work activity that would require him to concentrate for extended periods of time without a break.  The vocational expert stated that such a claimant could work as a warehouse worker or a car washer.  Meunier testified that he would be hesitant to say the claimant could operate equipment, such as a tractor, or do any hazardous work like roofing or construction labor.

The ALJ modified the hypothetical to include a marked to extreme limitation in concentration.  Meunier stated that this limitation would not only eliminate all past relevant work but any other type of work, even routine, unskilled work.  (Tr. 394).

The ALJ's next hypothetical posited a claimant with plaintiff's age, education and past relevant work, with the following limitations:  maximum lifting ability of 20 pounds frequently or occasionally, ability to alternate sitting and standing for 30 minutes at a time, no climbing or working at unprotected heights, and stair climbing limited to one

flight.  Meunier stated that this scenario would preclude medium or heavy work but that the claimant could perform limited types of unskilled sedentary and light work, such as surveillance system monitor, security guard and inspection jobs, such as testing, sorting or sampling.  (Tr. 395-96).  Meunier testified that there are 12,250 surveillance system monitor jobs available.  He stated that there are 74,957 light security guard jobs and a large number of sedentary gate guards and night patrol guards, but he would reduce those numbers by 75 percent because of the alternating sit/stand restriction, leaving about 75,000 jobs that would fit the hypothetical.  Further, he testified that there are 13,317 unskilled, sedentary inspector, checker and examiner jobs in the national economy.

The ALJ further limited this hypothetical by adding a moderate impairment in concentration secondary to chronic pain.  The vocational expert testified that this limitation would have no effect on the availability of jobs because the jobs he had just described do not require sustained attention for long periods of time. (Tr. 396).  However, when the ALJ added a marked limitation in concentration, Meunier said that restriction would eliminate all competitive employment.  (Tr. 397).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 14-17).  I find the ALJ's summary of the medical evidence

14

substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.       Plaintiff's Appeal

1.       *The ALJ did not violate the remand order by failing to analyze or discuss plaintiff's side effects from his medications.*

North contends that the ALJ violated the remand order by failing to analyze his side effects from his medications.  This argument lacks merit for several reasons.

First, the Appeals Council itself did not find any violation of its order.  North made a similar argument in his request for administrative review (Tr. 365), yet the Appeals Council denied review.

Second, it is not this court's function to examine the propriety of the various steps in the administrative process.  This court's review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.

To the extent that plaintiff is arguing that the ALJ erred by failing to analyze or discuss the side effects of his medications, substantial evidence supports the ALJ's findings.  The ALJ noted in his opinion North's testimony that OxyContin makes him dizzy (Tr. 16), but the ALJ did not specifically mention plaintiff's testimony concerning

other side effects of his medications.  Plaintiff's only other testimony about side effects was at the first hearing, when he stated that Lortab (which he was no longer taking at the time of the second hearing) made him itch and put him to sleep for two to three hours and that his muscle relaxer made him weak and drowsy.  (Tr. 375).  At the second hearing, North testified that OxyContin made him dizzy and constantly drowsy.  (Tr. 388).

A claimant's own reports of his symptoms, including pain, fatigue and dizziness, are insufficient to establish a medical impairment.  Subjective complaints like these must be corroborated by objective medical evidence.  20 C.F.R. §§ 404.1528(a), 416.928(a), 404.1529(a), 416.929(a); Ukolov v. Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005); Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996); Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989); Liscano v. Barnhart, 230 F. Supp. 2d 871, 884 (N.D. Ind. 2002).

My review of plaintiff's extensive medical records from a four-year time period reveals no indications that he ever complained to a treating or examining physician or a physical therapist that his medications made him dizzy or sleepy, or that any physician changed his medications because of such side effects.  North's testimony concerning his medication side effects was thus inconsistent with and substantially unsupported by the medical evidence.

The ALJ found plaintiff's testimony concerning his limitations not entirely credible because it was inconsistent with the medical evidence.  The ALJ has the responsibility to

evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court.  <u>Falco v. Shalala</u>, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991); <u>Villa</u>, 895 F.2d at 1024.  The ALJ'S explanation of his reasons for finding plaintiff not entirely credible is all that is required.  <u>Falco</u>, 27 F.3d at 163-64; <u>Godbolt v. Apfel</u>, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); <u>accord James J. Flanagan Stevedores, Inc. v. Gallagher</u>, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing <u>Falco</u>, 27 F.3d at 164).

Plaintiff also argues that the ALJ failed to take account of any medication side effects when determining his ability to work.  The ALJ posed and the vocational expert responded to several hypotheticals that incorporated limitations on concentration as a result of chronic pain and pain medications.  Plaintiff contends that the ALJ ignored that evidence in his opinion.

The ALJ did not specifically incorporate any limitation on concentration in his findings concerning plaintiff's residual functional capacity.  However, the ALJ found that plaintiff's residual functional capacity would allow him to perform jobs such as security guard, inspector/sorter/sampler and surveillance monitor.  In making this finding, the ALJ relied on the vocational expert's testimony that the claimant could perform these jobs even if he had a moderate impairment in concentration secondary to chronic pain.

17

Moreover, the ALJ was not required to accept the vocational expert's opinion that a marked impairment in concentration would eliminate all competitive employment, when the ALJ found no such credible impairment supported in the medical evidence.  Carey v. Apfel, 230 F.3d 131, 143 (5th Cir. 2000).

Plaintiff was represented by counsel at the hearing, and his counsel also questioned the vocational expert.  An ALJ'S hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ'S question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ'S findings and disabilities recognized but omitted from the question)."  Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).  North's counsel questioned the vocational expert to clarify Meunier's opinion concerning the effect of a marked limitation in concentration.  However, the ALJ found that such a limitation was not credible.  Accordingly, the ALJ was not required to include such a limitation in his hypothetical.  Carey, 230 F.3d at 143.

Substantial evidence supports the ALJ'S finding that North does not suffer from a marked limitation in concentration as a result of his medications.  Therefore, the

vocational expert's testimony is substantial evidence on which the ALJ can rely to determine that North can perform light work with the restrictions noted in his opinion.

> 2.    *The ALJ did not violate the remand order by failing to resolve any conflicts with the Dictionary of Occupational Titles ("DOT").*

North contends that the ALJ violated the remand order by failing to resolve any conflicts with the DOT.  Again, the Appeals Council itself did not find any violation of its order, and it is not this court's function to examine the propriety of steps in the administrative process unrelated to the existence of substantial evidence to support the ALJ'S conclusions and his application of proper legal standards.

Although the Commissioner may take notice of the reliable job information available from various governmental and other publications, including the DOT, he is not bound by it, but may rely on vocational expert testimony.  20 C.F.R. § 404.1566(d), (e); Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995); Villa, 895 F.2d at 1022. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions.  The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." Vaughan, 58 F.3d at 132 (quotation and citation omitted); accord Leggett, 67 F.3d at 565.  Accordingly, even if the vocational expert testimony

differs somewhat from the published job data, it constitutes substantial evidence upon which the ALJ may rely and appropriately did rely in this case.

Moreover, North has not pointed out any actual conflicts between the vocational expert's testimony and the DOT.  "[P]rocedural perfection in administrative proceedings is not required and procedural improprieties will constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the decision." Ferguson v. Barnhart, No. 02-849, 2003 WL 21277130, at *1 (E.D. La. May 30, 2003) (Duval, J.) (citing Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988) (citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)); accord Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989).  The ALJ'S failure to discuss the DOT expressly is not error that prejudices plaintiff's substantive rights, Morris, 864 F.2d at 335; Sartain, 2000 WL 193067, at *4, because there is no evidence of any conflict with the DOT and because the ALJ'S finding that plaintiff can perform work with the restrictions noted in his opinion is supported by substantial evidence.

3.      *The ALJ did not err by concluding that plaintiff could work in jobs that existed in significant numbers in the national economy.*

Under this assignment of error, North argues that the ALJ erred in concluding that he could work in jobs that existed in significant numbers in the national economy because

20

there was no evidence regarding the numbers of jobs available in any particular region, especially in Louisiana.

The Commissioner's regulations do not require an ALJ to find that a significant number of jobs exists in the state where the claimant lives.  Rather, the Commissioner "consider[s] that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.  It does not matter whether--(1) Work exists in the immediate area in which you live; . . . ." 20 C.F.R. §§ 404.1566(a), 416.966(a) (emphasis added).

North also contends that the vocational expert's testimony was unclear whether he referred to numbers of jobs available in the state economy or the national economy. Although Meunier did testify at one point that he was referring to the national economy (Tr. 396), it does not actually matter whether he was referring to the state or the national economy, under the regulations cited above.  Furthermore, plaintiff suffered no prejudice from the ambiguity, if any, so long as the numbers that Meunier cited were "significant." Plaintiff does not argue that the numbers were not significant.

The ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform.  His findings were based on vocational expert testimony, were therefore supported by substantial evidence and complied with the Commissioner's regulations.

21

4.     *The ALJ did not err by failing to assess whether plaintiff could maintain employment.*

Plaintiff argues that the ALJ failed to assess whether he could not merely obtain, but could maintain, employment, as allegedly required by Watson v. Barnhart, 288 F.3d 211 (5th Cir. 2002).  However, the Fifth Circuit in Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003), clarified Watson and specifically held that the ALJ need not make a separate finding in every case that a claimant is capable of sustained employment.  That holding was confirmed again in Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005).

> This court made clear in Frank that "nothing in Watson suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case."  Rather, "Watson requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms."  Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC [residual functional capacity] determination.

Id. at 465 (quoting Frank, 326 F.3d at 620).

North contends that the ALJ'S failure to take into account his medication side effects violated Watson.  However, just as in Perez and Frank, in which both plaintiffs similarly had degenerative disc disease and back pain, North "has not made the requisite showing" and "has not offered any evidence that his condition 'waxes and wanes' in intensity such that his ability to maintain employment was not adequately taken into account in his RFC determination."  Id.

The ALJ found North's allegations of disabling side effects and other limitations not credible and not supported by the record.  Thus, the ALJ was not required to apply <u>Watson</u> or to make separate findings that North could maintain a job.  This assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ did not err by failing to analyze plaintiff's side effects from his medications, failing to resolve any conflicts with the DOT, finding that plaintiff could work in jobs that existed in significant numbers in the national economy or failing to assess whether plaintiff could maintain employment.  Substantial evidence in the record supports the ALJ'S  findings.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  8th  day of May, 2006.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE